UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 6 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MICHAEL J. MORALES | § |
| | § Civil Action No. B-03-082 |
| Plaintiff | § |
| v. | § |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration | § |
| Defendant | § |

## MOTION FOR SUMMARY JUDGMENT

The plaintiff moves the Court for summary judgment on the complaint for judicial review of a denial of a claim for social security benefits based on the administrative record which has been filed with the Court.

## PLAINTIFF'S BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF JURISDICTION

This action for judicial review of a denial of a claim for social security disability benefits is authorized by the Social Security Act (42 USC 405(g) and 1383(c)(3)). The plaintiff has exhausted all administrative remedies and filed a timely request for judicial review.

### STATEMENT OF THE ISSUE

Whether the finding that, upon attainment of age 18, the plaintiff was able to engage in substantial gainful activity and was therefore not disabled under the adult standard for determining disability under the Social Security Act ("Act").

## STATEMENT OF THE CASE

The plaintiff had received supplemental security income payments under title XVI of the Act from 1993 to 1997. The application at issue was filed in January 2000 [TR 85-89]; denied at the initial level of adjudication in March 2000 [TR 70-75]; and denied at the reconsideration level in August 2000 [TR 77-79]. Between the time of the reconsidered denial and the date of the hearing in May 2001 [TR 33-53], the plaintiff attained age 18 [TR 85].

In the decision issued on June 25, 2001, the administrative law judge ("ALJ") found that the plaintiff was not disabled prior to attainment of age 18 under the childhood disability standards (20 CFR 416.924a). [TR 17-22]. He also found that the plaintiff, despite his learning disorder, is able to perform unskilled work at all levels of exertion under the adult standards (20 CFR 416.920). [TR 22-25]. The Appeals Council denied the request for review of that decision on March 21, 2003. [TR 6-9].

## RELEVANT FACTS

The lower levels of adjudication focused solely on the childhood standards for determining disability – whether the applicant engages in age-appropriate behavior. The form completed by State agency reviewers indicates that the plaintiff has a learning disorder; that he has a verbal IQ score of 58; that he has been in special education classes; but he is not disabled. [TR 297-300].

The record contains no psychometric testing other than a reference to the WISC-R on which he achieved a verbal IQ score of 58 and a TONI-2 on which he achieved a score of 89. [TR 188, 194, 215, and 300]. The adult standards for determining disability focus on the applicant's ability to do physical and mental work-related activities. Under section 12.05B of the

2

Listing of Impairments, an individual is deemed to be disabled if he or she has an IQ score of 59 or less.

The ALJ did not have a medical expert at the hearing to determine whether the IQ score of 58 measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults, or to determine the significance of the TONI-2 test. There is no psychological assessment in the record of the plaintiff's ability to perform various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting. The ALJ did not have a vocational expert at the hearing to determine the impact of the plaintiff's mental limitations on his potential occupational base for unskilled work.

## STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied in evaluating the evidence (42 USC 405(g) and 1383(c)(3)). See: Boyd v. Apfel, 239 F. 3d 698, 704 (5th Cir. 2001) [quoting Harris v. Apfel, 209 F. 3d 413, 417 (5th Cir. 2000)].

## ARGUMENTS

### I

The Regulations require the ALJ to follow a series of sequential steps when evaluating a claim for disability benefits (20 CFR 416.920(a)). After the ALJ has determined that the plaintiff is not engaged in substantial gainful activity and has a severe impairment, he or she must then

determine whether that impairment meets the medical criteria, or is equal in severity to the medical criteria, of an impairment which is listed in Appendix 1 of the Regulations ("Listings") (20 CFR 416.920(d)). If the impairment meets or equals the requirements of the Listings, the plaintiff must be found disabled on medical factors alone without further consideration (20 CFR 416.920(d), 416.925, 416.926). See: Justice v. Shalala, 842 F. Supp. 251 (ED Tex. 1993).

Under section 12.05B of the Listing of Impairments, an individual is deemed to be disabled if he or she has an IQ score of 59 or less. The ALJ did not have a medical expert at the hearing to determine whether the IQ score of 58 measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults. The ALJ's findings with respect to the plaintiff's residual functional capacity rests on his independent medical assessment of the plaintiff's daily activities. The Court of Appeals for the Seventh Circuit has warned ALJs against "playing doctor" and making "common sense" medical conclusions:

> "But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.... The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong."

Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990), cited in Frank v. Barnhart, 326 F. 3d 618, 622 (5th Cir. 2003).

In Schmidt, the Court rejected the ALJ's "common sense" reasoning that an individual who played handball for forty minutes a week despite a cardiac impairment could hold down a job, holding that the ALJ could not substitute his medical judgment for that of a physician. In the case at bar, the ALJ discussed section 12.05 of the Listing of Impairments but failed to make reference to the plaintiff's verbal IQ score of 58. The ALJ did not have a medical expert at the

hearing to determine whether the IQ score measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults, or to determine the significance of the TONI-2 test.

## II

Social Security Ruling 85-15 states that the ALJ may not assume that failure of a mental disorder to meet or equal a listed impairment equates with an ability to do unskilled work. A presumptive limitation (e.g. "unskilled work") is not permitted merely because the plaintiff has a mental disorder. This ruling explains:

> "The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, a mentally impaired individual may have difficulty meeting the requirements of even so-called 'low-stress' jobs.
>
> "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make the performance of an unskilled job as difficult as an objectively more demanding job. For example, a busboy need only clear dishes from a table. But an individual with a severe mental disorder may find unmanageable the demand of making sure that he removes all of the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable to some mentally impaired persons. Any impairment-related limitation created by an individual's response to the demands of work, however, must be reflected in the RFC assessment."

The record must contain evidence of the individualized nature of a plaintiff's stress reactions (that is, what circumstances trigger the plaintiff's stress; how the plaintiff reacts to stress; and what job

attributes are likely to produce those stress reactions in the particular plaintiff as opposed to the average worker). Without this kind of individualized evidence, the assessment of the plaintiff's residual functional capacity is inaccurate. Moreover, whatever "low-stress" or "unskilled" jobs named by the vocational expert would also be inaccurate because the testimony would reflect jobs that would be low in stress only for the average worker and not those that would be low in stress for the particular plaintiff. Therefore, a presumptive limitation (e.g. "simple work") is not permitted merely because the plaintiff has a mental disorder. The ALJ must make an individualized assessment of the plaintiff's ability to perform basic work-related mental activities.  See: Lancellotta v. Secretary HHS, 806 F.2d 284 (1st Cir. 1986) [discussing the individualized assessment required by Social Security Ruling 85-15]. See also: Sanders v. Sullivan, 983 F. 2d 822 (8th Cir. 1992) [ALJ erroneously assumed, without further psychological or vocational testing and without expert vocational testimony, that work-related stress resulting from a mental disorder would be minimized in an unskilled job].

Social Security Ruling 96-8p states that the limitations identified on the Psychiatric Review Technique Form (completed as a form at the lower levels of adjudication and incorporated into the written decision at the ALJ level of adjudication ) are not a residual functional capacity assessment but rather a rating of the severity of the plaintiff's mental impairment at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a

routine work setting (20 CFR 416.920a, 416.921(b) and 416.945(c)).

Social Security Ruling 96-9p specifically provides that mental limitations may cause a significant erosion of the occupational base for unskilled sedentary work (although work at any other level of exertion would be similarly adversely affected):

> "Mental limitations and restrictions: A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e. 8 hours a day, 5 days a week, or equivalent schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. These mental activities are generally required by competitive, remunerative, unskilled work:
>
> > Understanding, remembering, and carrying out simple instructions.
> >
> > Making judgments that are commensurate with the functions of unskilled work — i.e. simple work-related decisions.
> >
> > Responding appropriately to supervision, coworkers and usual work situations.
> >
> > Dealing with changes in a routine work setting.
>
> A less than substantial loss of ability to perform any of the above basic work activities may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities must be assessed and a judgment made as to their effect on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource."

The ALJ incorrectly made an assessment of the severity of the plaintiff's mental impairment at steps 2 and 3 of the sequential evaluation process. Section 12.05B of the Listing of Impairments does not require such an assessment. If the plaintiff has an IQ score of 59 or less, he is conclusively presumed to be disabled. Moreover, the ALJ's presumptive finding that the

plaintiff can do unskilled work to is contrary to the above-cited regulations and administrative rulings and not supported by substantial evidence because he failed to assess specific mental limitations. There is no psychological assessment in the record of the plaintiff's ability to perform various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting. Therefore, this case should be remanded to the Commissioner for a supplemental hearing, an assessment of the plaintiff's specific work-related mental limitations, and a new decision.

### III

The medical-vocational guidelines of the regulations, which permit the ALJ to take administrative notice of jobs in the national economy which a plaintiff may be able to do despite his or her limitations, cannot be applied whenever the plaintiff's ability to do the full range of work at any given exertional level is significantly compromised by non-exertional limitations or a combination of exertional and non-exertional limitations. The ALJ is required to obtain testimony from a vocational expert to ascertain the impact of the plaintiff's non-exertional limitations on his or her potential occupational base for other work. Newton v. Apfel, 209 F. 3d 448, 458 (5th Cir. 2000).

Borderline intellectual functioning evidenced by an IQ score below 80, even though not of listing-level severity, is nevertheless a severe mental impairment which adversely affects the performance of basic work-related activities such as the ability to understand and carry out instructions, to use judgment, to respond appropriately to supervision and co-workers, and to deal with changes in a routine work setting (20 CFR 416.921). Accordingly, the plaintiff's mental

limitations should be assessed by a psychiatrist or psychologist, and the impact of those limitations on the plaintiff's potential occupational base should be assessed by a vocational expert.  See: Lee v. Shalala, 872 F. Supp. 1166 (ED N.Y. 1994).

## IV

The harmless error rule does not apply to this case because unresolved fact issues are material to the ultimate decision of whether the plaintiff is under a disability within the meaning of the Act.

The courts have extended the "harmless error rule" stated in Rule 61 of the Federal Rules of Civil Procedure to judicial review of social security administrative decisions.  Briefly stated, a procedural error will not constitute a basis for remand unless it adversely affects a substantive right or casts into doubt the existence of substantial evidence to support the decision.  The major underlying policy of the harmless error rule is to preserve judgments and avoid waste of time if the procedural error is not material to the outcome of the case.  See: Frank v. Barnhart, 326 F. 3d 618, 621-622 (5th Cir. 2003) [ALJ's decision did not turn on credibility of claimant's testimony]; Morris v. Bowen, 864 F. 2d 333, 336 (5th Cir. 1988) [failure to include limitation in hypothetical question to vocational expert not material to finding that claimant could do a past job]; Mays v. Bowen, 837 F. 2d 1362, 1364 (5th Cir. 1988) [a finding that claimant was limited to sedentary work rather than light work did not change result under the grid rules].

The first issue to be resolved is whether the plaintiff's IQ score of 58 is still valid and, if so, whether whether that IQ score measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults.  The ALJ should obtain a consultative psychological evaluation and, if necessary, the testimony of a medical expert to determine whether the

plaintiff's mental retardation meets or equals the criteria under section 12.05B of the Listing of Impairments.

The second issue to be resolved, if the plaintiff cannot be found disabled on medical factors alone, is his functional limitations in terms of his ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting (20 CFR 416.920a, 416.921(b) and 416.945(c)). The ALJ should obtain a consultative psychological evaluation and, if necessary, the testimony of a medical expert to determine those limitations.

The third issue to be resolved is the impact of those limitations on the plaintiff's potential occupational base. The ALJ must obtain expert vocational testimony to determine what work, if any, the plaintiff can do. Whenever expert vocational testimony is obtained and the decision is adverse to the plaintiff, the decision must include (1) citations of examples of the jobs or occupations the plaintiff can do functionally and vocationally, and (2) a statement of the incidence of such work in the region where the plaintiff resides or in the several regions of the country (20 CFR 416.969a and Social Security Rulings 83-14 and 85-15).

This case should be remanded for further proceedings because fact issues must be resolved by the Commissioner. The Court may not re-weigh the evidence and substitute its judgment for that of the Commissioner in determining issues of fact. Conflicts in the evidence must be resolved by the Commissioner, not the courts. <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).

## CONCLUSION

The Court should remand this case to the Commissioner pursuant to sentence four (4) of 42 U.S.C. 405(g) for further proceedings. The Court should also award reasonable attorney fees, court costs and other expenses of litigation, and all other legal or equitable relief to which the plaintiff is entitled in connection with the present action.

Respectfully submitted,

INGRAM LAW FIRM, P.C.

By: _____
JOHN J. INGRAM II
Attorney-in-Charge
State Bar No. 24025447
Southern District of Texas Bar No. 25468
3016-A N. McColl
McAllen, Texas 78501
(956) 661-0074 Telephone
(956) 661-0047 Facsimile

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was mailed to the opposing counsel on ___July 15, 2003___ by United States mail and by facsimile.

    Tasha Stevenson, Attorney-in-Charge
    Special Assistant U. S. Attorney
    Office of the General Counsel, SSA
    1301 Young Street, Suite 430
    Dallas, Texas 75202
    Telephone: (214) 767-4536
    Facsimile: (214) 767-9189