IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 4 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MICHAEL J. MORALES, | ) |
| Plaintiff | ) |
| vs. | ) CIVIL ACTION NO. B-03-082 |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant | ) |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

#### A. INTRODUCTION

This action is brought pursuant to 42 U.S.C. § 405(g), for a review of a final decision of the Commissioner of the Social Security Administration denying Plaintiff's claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c.

#### B. ISSUE

Whether substantial record evidence and relevant legal standards support a conclusion that Plaintiff was not disabled.

#### I. STATEMENT OF THE CASE

**1. General**

Plaintiff's mother filed an application for Childhood Supplemental Security on behalf of her son Michael Morales (Tr. 16). Plaintiff based his claim for disability benefits on a learning disability and poor vision (Tr. 16). Plaintiff turned 18 during the pendency of these proceedings

so his application was evaluated under the childhood disability standards as well as the adult standards for disability.

## 2. Testimony

Plaintiff testified that he was 18 years of age at the time of the administrative hearing. In addition, he stated that he was in the twelfth grade (Tr. 36). Plaintiff stated that his daily activities included helping with the yard, playing basketball with his friends and playing board games (Tr. 41).

## 3. The ALJ's Decision

In a decision dated June 25, 2001, the ALJ found at step five of the sequential evaluation process that Plaintiff does not have marked or extreme limitations in any of the domains of functioning. Therefore, he found that Plaintiff did not have an impairment that was the functional equivalent of an impairment listed in Appendix 1(Tr. 20). Further he found that Plaintiff was not under a disability as defined in the Social Security Act (Tr. 25). Plaintiff filed a Request for Review. However, the Appeals Council concluded that Plaintiff's Request for Review failed to provide a basis for changing the ALJ's decision (Tr. 6-8). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. The instant civil action followed.

## II. ARGUMENT

**The Commissioner's Decision That Plaintiff Is Not Disabled Within The Meaning Of The Social Security Act Is Supported By Substantial Evidence And Must Be Affirmed**

Judicial review of the Commissioner's final decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. See Anthony v. Sullivan, 954 F.2d

289, 292 (5th Cir. 1992). Where, as here, the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. See Richardson v. Perales, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. at 401.

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. 104-193), which provides for a stricter standard for determining eligibility for Title XVI disabled child's benefits. Under the new standard, a child is entitled to disability benefits only if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. In addition, the new legislation eliminates the individualized functional assessment ("IFA") for children and modifies the childhood mental disorders listings in Appendix 1 to eliminate references to maladaptive behavior in the domain of personal/behavioral function. This new standard expressly applies to all cases pending in court on and after August 22, 1996, in which benefits were wholly denied. See Pub. L. 104-193. Because this new standard is more stringent than the former standard, any decision that could have been affirmed under the former standard may and should be affirmed by this Court.

Under the former standard, which was promulgated pursuant to the Supreme Court's order in Sullivan v. Zebley, 493 U.S. 521 (1990), a four-step sequential evaluation process for determining childhood disability was established. Under this evaluation process, the ALJ was required to consider the following issues: (1) whether the child engaged in substantial gainful

activity, (2) whether the child's impairment or impairments were so severe as to cause more than a minimal limitation on the child's ability to function in an age-appropriate manner, (3) if the impairment was severe, whether it met or equaled an impairment listed in Appendix 1 to 20 C.F.R. Part 404, and (4) if the child's impairment did not meet or equal a listed impairment, whether the impairment was of comparable severity to an impairment that would disable an adult. At the fourth step, an IFA was performed to determine whether the child's impairment limited his ability to physically or mentally function in an age-appropriate manner. See 20 C.F.R. § 416.924.

After reviewing the evidence and hearing testimony, the ALJ determined that Plaintiff's learning disability was a severe impairment, but he found that he does not have an impairment or combination of impairments that meets or equals an Appendix 1 impairment (Tr. 24). Consequently, the ALJ properly proceeded to perform an individualized functional assessment to determine if Plaintiff's impairment limited his ability to physically or mentally function in an age-appropriate manner, thereby being comparable in severity to that which would disable an adult. The ALJ determined that Plaintiff is not disabled under currently applicable childhood disability evaluation standards. Thus, he found Plaintiff "not disabled" and not entitled to disabled child's benefits pursuant to SSR 96-6p. In addition, the ALJ found that Plaintiff was not eligible for adult Supplement Security Income payments (Tr. 25).

### A. Plaintiff's Impairment Does Not Meet Or Equal The Listings.

Plaintiff argues that he meets Section 112.05B, and 12.05B of the Appendix 1 Listings. See Pl.'s Br. at 8. However, despite Plaintiff's general assertions to the contrary, the medical evidence simply does not show that he has an impairment of the severity required to demonstrate disability pursuant to the Appendix 1 listing.

First, recall that Listing 112.05, and 12.05 are entitled "Mental Retardation," and Plaintiff has failed to show a diagnosis of such. If a claimant can satisfy such a diagnosis, he must next establish a valid verbal, performance, or full scale IQ score of 59 or less. See 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 112.05B and 12.05B.

The determination of whether a claimant is found disabled *per se* due to his impairment is made at the third step of the sequential evaluation process, and as noted above, the burden remains on the claimant at this step to prove that he satisfies a Listed Impairment. See Muse, 925 F.2d at 789. The question of whether Plaintiff meets a listed impairment is strictly a medical determination, and conjecture does not play a role in the determination. See Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990). The Commissioner is vested with considerable discretion in her application of classifications used for the effective administration of her program. See Schweiker v. Gray Panthers, 453 U.S. 34, 43-44 (1981). Social welfare legislation, by its very nature, involves drawing lines among categories of people, lines that are necessarily arbitrary. See Califano v. Aznavorian, 439 U.S. 170, 174-75 (1978). No error exists simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." See Dandridge v. Williams, 397 U.S. 471, 484 (1970). Recall that Listing 12.05 regards individuals with mental retardation, not someone who merely has a below average IQ. Specifically, it "refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested prior to age 22." See 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 112.05 and 12.05. Plaintiff's suggestion that he need only satisfy subparagraph B of 112.05 and 12.05 is misplaced, and ignores the entirety of Listings 112.05 and 12.05. Plaintiff has not been diagnosed with mental retardation, nor does the entirety of the medical evidence support such a conclusion.

5

The essential features of mental retardation are the presence of a significantly subaverage general intellectual functioning and significant limitations in adaptive functioning. See DSM-IV (4th ed. 1994), p. 39; Mental Retardation: Definition, Classification, and Systems of Supports, 9th ed., American Association of Mental Retardation, 1992 p. 1 (additional related limitation must be in two or more areas); Manual of Diagnosis and Professional Practice in Mental Retardation, American Psychological Association (1996), p. 13; The Merck Manual (16th ed. 1992), p. 2108 (associated difficulties are in learning and social adaptation).

> The DSM-IV notes that the "essential feature" of mental retardation is a
>
> significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 (Criterion C).

DSM-IV at 39. "Rather than a low IQ," the DSM-IV notes that "impairments in adaptive functioning "are usually the presenting symptoms in individuals with Mental Retardation." Id. at 40. While Plaintiff may have a low IQ, he has not shown characteristics of impairments in adaptive functioning as described above.

The regulations clearly permit scrutiny of test results and that they are only one factor to be reviewed. As discussed above, such scrutiny is also accepted in medical literature. DSM-IV, at 39-40. The regulations explain that "it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity." See 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 112.00D, and 12.00D. The Commissioner submits that while Plaintiff has demonstrated that he satisfies the IQ requirement of 112.05B and 12.05B, he fails to present a diagnosis of mental retardation with

significant subaverage general intellectual functioning prior to age 22. Plaintiff therefore fails to satisfy the first prong of Listing 12.05 because he fails to show a diagnosis of mental retardation.

The Commissioner does not deny that the objective evidence of record shows that Plaintiff has a learning disability (Tr. 188). However, the evidence does not show that Plaintiff has ever been diagnosed with mental retardation. In a sociological assessment performed on February 18, 1997, an examiner reported that Plaintiff's intelligence was slightly below average (Tr. 215). More importantly, in this same report Plaintiff was diagnosed with a learning disability (Tr. 216). The examiner specifically stated that Plaintiff would benefit from a more self-paced individualized curriculum taught by a teacher trained in the area of learning disabilities (Tr. 223). Moreover, the examiner reported that Plaintiff met the specific criteria for learning disability (Tr. 223).

In an additional report from the Lyford Independent School District, Plaintiff was diagnosed as learning disabled and not mentally retarded (Tr. 241). In an appendix to this report, the examiner reported that Plaintiff did not seem to try as hard as he should. In addition, she reported that Plaintiff was passing most of his classes at that time and was failing math because of some work he had not completed. The examiner reported that Plaintiff qualified as learning disabled (Tr. 248).

In a school activity report completed by one of Plaintiff's teachers, she stated that Plaintiff had great limitations in reading. Although she also reported that Plaintiff would always need help when it comes to reading, she also reported that Plaintiff was participating in a work program (Tr. 290). The substantial evidence of record does not support Plaintiff's allegations

that he is mentally retarded. Plaintiff has failed to present any additional medical evidence that substantiates his allegations of being mentally retarded.

Moreover, Plaintiff's daily activities were not indicative of a mentally retarded individual. In a report of continuing disability, Plaintiff stated that his daily activities included taking out the trash, picking up clothes, washing dishes, playing basketball, listening to music, and visiting friends and relatives (Tr. 159). Plaintiff also testified that he had worked for the JPTA one summer (Tr. 37). Plaintiff's daily activities were clearly not indicative of a disabled individual. See Reyes v. Sullivan, 915 F.2d 151, 154-55 (5th Cir. 1990).

### B. **The ALJ Performed An Individualized Functional Assessment**.

Plaintiff also argues that the ALJ erred by not performing an individualized assessment of his ability. See Pl.'s Br. at 6. Contrary to Plaintiff's argument, the ALJ analyzed Plaintiff's case under the childhood disability standard for the period prior to him reaching 18 years of age and he analyzed Plaintiff's case under the adult standard for disability for the period after Plaintiff reached 18 years of age and properly determined that Plaintiff was not disabled.

When examining Plaintiff's case under the childhood disability standards, the ALJ reported that there were six domains of activities that had to be considered in determining whether a child's impairment functionally equals a listed impairment in severity (Tr. 19).

In the first domain of acquiring and using information, the ALJ explained that this domain addresses the issue of how well the child acquires information and how well the child uses the information which is learned. The ALJ acknowledged that Plaintiff has a learning disability and was not a particularly good student. However, the ALJ found that the evidence does not indicate limitations that interfere significantly with his ability to independently initiate, sustain, or complete activities of day to day functioning. The ALJ noted that Plaintiff had a

driver's license, plays sports, goes to the store, cooks simple meals, and can easily perform the mental demands of basic activities (Tr. 19).

In the second domain of attending and completing tasks, the ALJ noted that Plaintiff had been characterized by his teacher as being distractible, and having problems working independently some of the time. However, he also reported that Plaintiff's had been described as being able to sustain attention, understand directions, and participate in class. The ALJ found a less than marked limitation in this domain (Tr. 19).

In the third domain of interacting and relating to others, the ALJ found that Plaintiff did not have any limitations. He noted that Plaintiff's teachers reported that he was almost never in trouble and he used good judgment (Tr. 20). More importantly, Plaintiff testified that he has friends that he interacts with on a regular basis (Tr. 44, 50).

In the fourth domain of moving about and manipulating objects, the ALJ found that Plaintiff does not have any limitations (Tr. 20). Particularly he noted that Plaintiff plays sports. Further, he found that Plaintiff did not have any physical problems (Tr. 20).

The ALJ found that Plaintiff does not have any significant limitations in the fifth domain which encompasses his ability to care for himself (Tr. 20). Plaintiff testified that he cooks and that he drives on occasion (Tr. 40, 45). The ALJ found that Plaintiff's mother's testimony that Plaintiff did not particularly like cleaning his room was fairly predictable teen behavior. Futher, he found that Plaitniff's mother's testimony that Plaintiff had to be reminded to use turn signals was not indicative of any substantive personal neglect (Tr. 20).

Lastly, on the sixth domain of health and physical well being, the ALJ found a less than marked limitation. Specifically he found that Plaintiff did not have any medical conditions, takes no medications, and is involved in no therapies. The ALJ also found that Plaintiff had

9

aspirations of attending trade school, performed age appropriate activities, and had no significant physical limitations (Tr. 20). The ALJ clearly performed a detailed individualized assessment as required by the Social Security Rulings.

### C. The ALJ Was Not Required To Obtain Vocational Expert Testimony

Plaintiff also argues that the ALJ was required to obtain vocational expert (VE) testimony. See Pl.'s Br. at 8. Contrary to Plaintiff's argument, the ALJ was not required to call a VE to testify because Plaintiff's alleged non-exertional impairment did not significantly impact Plaintiff's ability to perform the full range of work identified by the ALJ. In the Fifth Circuit, if the Plaintiff suffers only from exertional impairments or his non-exertional impairments do not sufficiently affect his residual functional capacity, then the Commissioner may rely exclusively on the Appendix 2 Guidelines in determining whether there is other work available to the Plaintiff which he can perform. However, the Secretary may not rely on the Guidelines and must utilize vocational expert testimony if Plaintiff suffers from only non-exertional impairments or there is a combination of exertional and nonexertional impairments. See Mays v. Bowen, 837 F.2d 1362 (5th Cir. 1988); Fraga v. Bowen, 810 F.2d 1296 (5th Cir. 1987); Fields v. Bowen, 805 F.2d 1168 (5th Cir. 1986). Contrary to Plaintiff's argument, the ALJ was not required to call a VE to testify in this particular case because Plaintiff's alleged nonexertional impairments did not significantly affect his residual functional capacity to perform substantial gainful employment.

Plaintiff also argues that he should be assessed by a psychiatrist or psychologist to determine the impact of his mental limitations on his potential occupational base. See Pl.'s Br. at 9. Plaintiff was represented by counsel during the pendency of the administrative proceedings and had every opportunity to request a consultative examination if he thought one was warranted

and he did not. Plaintiff is attempting to place his burden on the Commissioner. When an applicant for Social Security benefits is represented by counsel the ALJ is entitled to assume that the applicant is making her strongest case for benefits." <u>Glenn v. Secretary of HHS</u>, 814 F.2d 387, 391 (7th Cir. 1987). Included with this presumption is that Plaintiff's representative is aware of the regulations and remedies available. <u>See</u> 20 C.F.R. § 416.1540(b)(3)(i) (competent representation "includes knowing the significant issue(s) in a claim and having a working knowledge of the applicable provisions of the Social Security Act, as amended, the regulations and the Rulings..."). Plaintiff's counsel is attempting to shift the burden to the Commissioner when Plaintiff has the duty to present evidence of a disabling impairment. While the ALJ has the duty to develop the record, it is not the ALJ's duty to become the claimant's advocate. <u>See</u> <u>Glass v. Shalala</u>, 43 F.3d 1392, 1396 (10th Cir. 1994); 20 C.F.R. § 416.912 (Plaintiff's duty to produce evidence of a disabling impairment). Because Plaintiff has been represented by counsel during the pendency of the administrative process, Plaintiff had ample opportunities to present his claim and Plaintiff has failed to show that he meets or equals 12.05B of the Appendix 1 listings.

If the court finds that the ALJ should have called a psychologist or a psychiatrist, the Commissioner submits that this is harmless error because Plaintiff has failed to show that he was prejudiced by the fact that the ALJ did not call a psychologist or a psychiatrist. That is, he must show that had the ALJ call a psychologist or psychiatrist, he could and would have adduced evidence that might have altered the ALJ's decision. <u>Ripley v. Chater</u>, 67 F.3d 552, 557 (5th Cir, 1995); <u>Kane v. Heckler</u>, 731 F.2d 1216, 1219 (5th Cir. 1984).

### III. CONCLUSION

Contrary to Plaintiff's arguments, the substantial evidence of record supports the ALJ's decision. For the above-stated reasons, the Commissioner respectfully requests that the Court affirm her administrative decision and dismiss Plaintiff's complaint.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

TINA M. WADDELL
Regional Chief Counsel, Region VI
Special Assistant United States Attorney

By: *[signature]*
TASHA W. STEVENSON
Special Assistant United States Attorney
Attorney in charge
Arkansas Bar No. 97245
Federal Bar No. 28157
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite 430
Dallas, Texas 75202
(214) 767-4536
Fax (214) 767-9189

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served upon counsel for the plaintiff, John Ingram, 3016A N. McColl, McAllen, Texas 78501 by certified mail, on this 1st day of August, 2003.

*[signature]*
TASHA W. STEVENSON
Special Assistant United States Attorney
Attorney in Charge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MICHAEL J. MORALES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner, Social )<br>Security Administration, )<br>)<br>Defendant. ) | Civil Action No. B-03-082 |

## ORDER

ORDERED that the decision of the Commissioner of Social Security Administration is AFFIRMED and Judgment is entered for Defendant.

Signed on this ___ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE