UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 2 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MICHAEL J. MORALES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-03-082 |
| | § | |
| JO ANNE B. BARNHART, Commissioner of | § | |
| the Social Security Administration, | § | |
| Defendant. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Michael J. Morales seeks judicial review of the Commissioner of Social Security's final decision regarding his application for Supplemental Security Income ("SSI") payments. This Court has jurisdiction to conduct judicial review pursuant to Section 204(g) of the Social Security Act, 42 U.S.C. § 405(g). Pending before this Court are Plaintiff's Motion for Summary Judgment (Docket No. 5) and Defendant's Motion for Summary Judgment (Docket No. 7). For the following reasons, the Court recommends that the Plaintiff's Motion for Summary Judgment be DENIED, and that the Defendant's Motion for Summary Judgment be GRANTED. Accordingly, the decision of the Commissioner should be AFFIRMED.

### PROCEDURAL BACKGROUND

On April 1, 1993, Michael J. Morales began receiving Childhood SSI payments due to a learning disability and poor vision. In July of 1997, Morales' condition was reevaluated under the revised disability rules for children. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. 104-193). Upon reevaluation, it was determined that

Morales no longer met the criteria for disability, and as a result his eligibility for SSI was terminated in September of 1997.

In 1998, another application for benefits under the Social Security Act was filed on behalf of Michael Morales by the claimant's mother, Esther Morales. That claim was denied initially and again denied on reconsideration on July 2, 1999. For whatever reason, following the denial on reconsideration the Morales family chose not to further pursue the 1998 claim.

On January 18, 2000, Esther Morales filed yet another application for Childhood SSI payments on behalf of her son. That application, which was denied initially and again denied on reconsideration, is at issue in the cause of action currently before this Court.

After Morales' claim was denied on reconsideration, Plaintiff requested an administrative hearing. The hearing was held before Administrative Law Judge ("ALJ") John R. Morris on May 23, 2001, in McAllen, Texas. The claimant appeared and testified on his own behalf, as did claimant's mother. On June 25, 2001, the ALJ issued his decision, determining that the claimant was not eligible for SSI because he was not under a "disability" as defined in the Social Security Act.

On August 17, 2001, Plaintiff requested review of the ALJ's unfavorable decsion. However, the Appeals Council denied Morales' request. Therefore, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review. Plaintiff filed the instant appeal seeking review of the Commissioner's final decision on May 1, 2003. The case is now ripe for judgement.

## FACTUAL BACKGROUND

The claimant turned eighteen while his application was pending. Thus, his claim was evaluated under both the childhood and adult disability standards. The claimant has a learning disorder and vision problems, though the vision deficit can be corrected by wearing glasses. He is not statutorily blind, and, according to the ALJ, claimant did not even wear his glasses at the administrative hearing held on May 23, 2001.

Claimant has a driver's license and testified that he plays sports, such as football, baseball and basketball. Furthermore, there is testimony to the fact that Plaintiff goes to the store, drives occasionally, cooks simple meals, and can easily meet the mental demands of other basic activities.

Plaintiff has been academically classified as learning disabled. At the time of the administrative hearing, claimant was enrolled in special education classes and demonstrated particular problems in subjects requiring verbal comprehension and mathematics. In eleventh grade he spent approximately fifty percent (50%) of his class time in special education courses. The claimant also testified that he planned on attending a trade college in the future.

## ALLEGATIONS

Plaintiff generally alleges that the conclusions and findings of the ALJ are not supported by substantial evidence and are contrary to law and regulation. More specifically, Plaintiff argues the following:

(1) that the ALJ erred by not having a medical expert at the administrative hearing to determine whether the claimant's childhood IQ score equated to an adult IQ score that would have qualified as a listed impairment, which, if true, would have necessarily led to a finding that the claimant was disabled;

3

(2) that the ALJ's presumptive finding that the claimant is able to do unskilled work is contrary to federal regulations and Social Security Rulings and was not supported by substantial evidence because he failed to assess the claimant's specific mental limitations; and

(3) that the claimant's mental limitations should have been assessed by a psychiatrist or psychologist, and that the impact of those limitations on the claimant's "potential occupational base" should have been assessed by a vocational expert.

Ultimately the claimant argues that because of the issues stated above this case should be remanded to the Commissioner for further proceedings.

## STANDARD OF REVIEW

Judicial review of a final decision by the Commissioner to deny benefits is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

As used in this context, the term "substantial evidence" means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *see also Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Brown*, 192 F.3d at 496. In determining the existence of substantial evidence, the court may not reweigh the evidence, decide issues de novo, or substitute its judgment for that of the administrative fact finder. *Brown*, 192 F.3d at 496; *see also Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

A claimant bears the burden of proving he or she is disabled. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). According to federal regulations, the legal standard for determining disability is to be applied using a five-step sequential process. *See* 20 C.F.R. §§ 404.1520 and 416.920; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1991).

The five-step analysis involves the following inquiries: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant's impairment or combination of impairments is severe; (3) whether the severe impairment is the same as, or equivalent to, an impairment described in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (4) whether the impairment prevents the individual from engaging in relevant work he has done in the past; and 5) whether other work exists in the national economy which the claimant can perform. 20 C.F.R. § 404.1520(a)-(f); *Bowling*, 36 F.3d at 435.

The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. *Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Thus, the claimant must show first that she is no longer capable of performing her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

5

## THE ALJ'S DECISION

In reaching the conclusion that the claimant is not disabled, the ALJ evaluated Morales' condition under both the adult and childhood disability standards. The ALJ found that Morales had not engaged in substantial gainful activity during the period of claimed disability (first step of the five-step process). The ALJ also found that Morales suffered from a learning disability, which was determined to be a "severe" impairment (second step), but that Morales' impairment did not meet or equal the severity of any listed impairment for which he would be found presumptively disabled (the third step).

The ALJ then addressed whether Morales retained the residual functional capacity to perform either his past relevant work (fourth step) or some lesser level of work activity (fifth step). The ALJ first determined that Morales had no relevant past work experience. He then determined that Morales has no physical limitations and can perform the demands of "heavy" work, and that mentally he retained the residual functional capacity to perform at least unskilled work activities. The ALJ considered Morales' relatively young age, limited education, and lack of past work experience. Then the ALJ applied the Medical-Vocational Guidelines without a vocational expert and entered a finding that Morales was not under a disability at any time through the date of the decision.

## ANALYSIS

A. Claimant's Eligibility for Benefits Prior to July 2, 1999.

As an initial matter, the Defendant asserts that this Court lacks jurisdiction to consider any claim by the Plaintiff to social security benefits prior to and including July 2, 1999. As the

ALJ noted in his decision, the period up to and including that date is considered to be previously adjudicated because Plaintiff failed to pursue his 1998 application after it was denied on reconsideration on July 2, 1999. *See* Tr. 16. This Court agrees with the ALJ's determination, and to the extent claimant seeks SSI payments for the time period up to and including July 2, 1999, such benefits must be denied based on the grounds of res judicata. *See* 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 985-86, 51 L.Ed.2d 192 (1977).[1]

B. Claimant's Eligibility for Benefits After July 2, 1999.

**1.** The Court first turns to the initial argument of the claimant regarding the alleged errors that occurred at the administrative hearing. Recall that claimant's first argument relates to his IQ score. According to claimant, the ALJ erred by not having a medical expert at the administrative hearing to determine whether the claimant's childhood IQ score equated to an adult IQ score that would have qualified as a listed impairment, which, if true, would have necessarily led to a finding that the claimant was disabled. Although Morales does not explicitly claim that he should have been found disabled based on his IQ score, his arguments are tantamount to asserting that he meets the listed disability of "mental retardation" found in the Code of Federal Regulations. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 112.05 and 12.05.

The Government counters that regardless of whether or not Morales meets the IQ requirement of the "mental retardation" listing, he still cannot establish that he is disabled

---

[1] Although it does not appear the Plaintiff seeks any benefits for the time period prior to July 2, 1999, for the sake of clarity the Court notes that any claim to such benefits would prove unavailing because of the reasons stated in the above analysis.

because there is no evidence –medical or otherwise– that the claimant has ever been diagnosed with mental retardation.[2]

The determination that a claimant is per se disabled is made at the third step of the sequential evaluation process, and as noted above, the burden remains on the claimant at this step to prove that he satisfies a listed impairment. *Brown*, 192 F.3d at 498; *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

The claimant seems to overlook the fact that federal regulations directly belie the argument he seems to be making. Despite Morales' assertions, a claimant cannot qualify for disability merely by meeting the IQ requirement of either Listing 12.05 or Listing 112.05. Under both the childhood and the adult standards, an individual seeking disability based on mental retardation under either Listing 12.05 or Listing 112.05 must not only meet the criteria set forth in the Listing, but also must satisfy the diagnostic description in the introductory paragraph of the Listing. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.00(A) and 112.00(A).[3]

Under both 112.05 and 12.05, mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning."[4] This definition is consistent with the symptoms of mental retardation described in medical literature. *See, e.g.,*

---

[2] In fact, the Government seems to concede that Morales meets the IQ requirement of 112.05 and 12.05, while Morales himself seeks a remand to prove exactly that fact. *See* Doc. No. 8 at p.6.

[3] Section 12.00 states, in relevant part, that "If your impairment satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing." Section 112.0 states, in pertinent part, that "If an impairment satisfies the diagnostic description in the introductory paragraph [of Listing 112.05] and any one of the six sets of criteria, we will find that the child's impairment meets the listing."

[4] The adult standard, found in Listing 12.05, adds the requirement that the impairment initially became manifest before the claimant reached age 22.

DSM-IV (4th ed. 1994), p.39. Accordingly, a claimant seeking disability under the Listings for Mental Retardation must demonstrate, first, that he or she meets the diagnostic description for –i.e., has been diagnosed with– mental retardation, and second, that he or she meets one of the various other criteria requirements, including a valid IQ score of 59 or less.

In this case, claimant fails to establish disability under either Listing 112.05 or 12.05 because there is no evidence of mental retardation, as that term is defined in the listings. The record clearly shows that the claimant has a learning disability (*see, e.g.,* Tr. at 188). However, the evidence does not show claimant ever was diagnosed with mental retardation, nor does it suggest he would meet the criteria for a diagnosis of mental retardation. For example, a sociological assessment detailed in the record led to a determination that the claimant's intelligence was only slightly below average (Tr. at 215). The same assessment diagnosed claimant with a learning disability (Tr. at 215, 223), a diagnosis that is also found in other parts of the record (Tr. at 241).

In short, the record evidence supports the determination that the claimant is not disabled, at least not per se disabled based on Listing 112.05 or 12.05. In this regard, there is more than a scintilla of evidence in the administrative record which adequately supports this portion of the Commissioner's decision. *See Sullivan*, 895 F.2d at 1022. Because the decision is supported by substantial evidence, the Commissioner's findings are considered conclusive. *See* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427.

Ultimately, as noted previously, the claimant sought remand so as to determine if the testing done equated to scores that would make him eligible for benefits. However, as this Court has determined, an individual is not deemed disabled under Listing 12.05 or 112.05 simply by

showing an IQ score of 59 or less. Accordingly, remand for the reasons sought by claimant is unnecessary, as there has been no suggestion that claimant can produce medical evidence that shows he is mentally retarded.

**2.** Claimant next argues that the ALJ's presumptive finding that he is able to do unskilled work is contrary to federal regulations and Social Security Rulings, and was not supported by substantial evidence because the ALJ failed to assess the claimant's specific mental limitations.

Contrary to the claimant's assertions, the ALJ did make an individual assessment regarding Morales' functional capacity. In fact, the ALJ followed the five-step sequential process and made the required findings at each step. After concluding that Morales' condition did not meet any listed impairment –a determination this Court agrees with– the ALJ moved on to examine whether the claimant's impairment was functionally equivalent to a listed impairment (Tr. at 18). In doing so, the ALJ looked at six domains of functioning used in determining functional equivalence of a child's impairment.

The six areas involve how well the claimant acquires and uses information; how well the individual is able to focus and maintain attention; how well the individual interacts and relates with others; how well the person moves and manipulates objects; how well the individual is able to care for themselves; and how the cumulative physical and mental effects of the claimant's impairments generally affect his or her health and physical well-being.

Although the ALJ examined these six areas of functioning in relation to step 3 of the five-step sequential process, his findings undoubtedly influenced his determination regarding the claimant's ability to work at steps 4 and 5. In fact, statements made by the ALJ suggest just that.

10

*See, e.g.,* Tr. at 24 ("The evidence therefore supports a finding that Mr. Morales has no physical limitations, and thus can perform the demands 'heavy' [sic] work"); *see also* Tr. at pages 17 and 23. Indeed, there is nothing in the record to suggest, as the claimant does, that the ALJ assumed "that failure of a mental disorder to meet or equal a listed impairment equates with an ability to do unskilled work." *See* Docket No. 5 at page 5. In any event, the ALJ's inquiries into the six areas of functioning support the Commissioner's determination regarding the claimant's capacity for work, as well as the ultimate decision of not disabled. *See* 20 C.F.R. § 416.926a (functional equivalent inquiry involves assessing "what you cannot do, have difficulty doing, need help doing, or are restricted from doing because of your impairment").

The ALJ did perform an individualized functional assessment (Tr. at 19-21), and the detailed findings and determinations made are sufficient to satisfy this Court's limited review of the legal standards employed and the evidence supporting the Commissioner's decision. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427. *Brown*, 192 F.3d at 496 (5th Cir. 1999); *Sullivan*, 895 F.2d at 1022; *see also Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988). In other words, there is substantial evidence in the record that supports the determinations regarding the claimant's limitations and their relationship to his ability to perform unskilled work.

**3.** The claimant lastly argues that his mental limitations should have been assessed by a psychiatrist or psychologist, and that the impact of those limitations on the claimant's "potential occupational base" should have been assessed by a vocational expert. Morales asserts that the ALJ should not have used the medical vocational guideline grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Grids"), when determining if the claimant could perform work in the national economy

11

despite his severe impairment. According to Morales, a vocational expert or evidence other than the grid was required to determine whether or not jobs exist in the economy that he can perform.

If impairments are solely exertional, or if the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy. *Id.* In this case, the ALJ did not rely on a vocational expert.

As noted in the ALJ's findings, Morales was determined to have "no exertional limitations and the mental ability to perform unskilled work." Tr. at 25. In other words, the claimant's only limitations were nonexertional.[5] However, the ALJ still apparently decided that vocational evidence was not warranted because he specifically found that 20 CFR 204.00 and medical vocational rules 203.25, 202.17 and 201.24 "direct a finding of not disabled." Tr. at 25.

It might be logical to presume that the ALJ decided to rely exclusively on the grid because the claimant's nonexertional limitations did not significantly affect Morales' residual functional capacity, which would make use of the guidelines appropriate. *Selders v. Sullivan*, 914

---

[5] According to Social Security Administration regulations, "[l]imitations are classified as exertional if they affect your ability to meet the strength demands of jobs. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling ... Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 404.1569a.

F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). However, the ALJ specifically found that the medical-vocational rules "direct a finding of 'not disabled,'" which would seem to suggest that he thought the guidelines were controlling. In fact, according to the Code of Federal Regulations, the medical-vocational guideline rules **"do not** direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 CFR Pt. 404, Subpt.P, App.2, § 200.00(e)(1) (emphasis added).

Ultimately, it would be mere speculation for this court to determine why, exactly, the ALJ chose to apply the Grids in this case. The fact of the matter is that the ALJ never expressly states why he applied the grids, or why he chose not to call a vocational expert, or even what exactly the nonexertional limitations at issue were. In other words, at this stage of the proceedings (step 5), the ALJ should have made findings regarding whether vocational evidence was warranted, and relatedly, whether any alleged nonexertional limitations significantly affected Morales' residual functional capacity to perform heavy work.

However, given the record, the Court concludes that there is substantial evidence to support the decision to use the Grids in this case. In other words, the record contains substantial evidence supporting the determination that any nonexertional limitations suffered by Morales did not significantly or sufficiently affect his residual functional capacity, and therefore exclusive use of the grid was permissible. *Newton*, 209 F.3d at 458. Recall that the ALJ made a series of determinations related to Morales' limitations at the third stage of the proceedings. The ALJ found that Morales did not have any marked or extreme limitations in any of the domains of functioning. Tr. at 20. In fact, in most areas of life Morales was determined to be quite normal. A review of the record, and particularly the transcripts of testimony by Morales' mother, suggests

that, not only is Morales capable of work, but that the proposition that his condition causes substantial limitations of any sort –other than in an educational setting– was itself suspect.

At the fifth stage of the proceedings, the Commissioner's burden is to show that there are jobs in the national economy that a claimant can perform. *See Fields*, 805 F.2d at 1170. The record reveals that Morales had plans to attend trade school. In addition, the only limitations his mother was able to testify to related to his occasional forgetfulness while driving and cooking, his unwillingness to clean his room, and his difficulties with some subjects at school. It is no wonder that the ALJ gave little credit to Morales' mother's assertions regarding her son's limitations. Tr. at 21. Morales' "limitations" seem consistent with the behavior of most teenage boys.[6]

Ultimately, this Court concludes that there is substantial evidence in the record to support the ALJ's decision to rely on the grids at stage 5 of the analysis. *See Fraga*, 810 F.2d at 1304. Thus, it was proper to rely solely on the grid in determining that other work existed in the national economy which Morales could perform. *Id.* at 1304-05.

**4.** The Fifth Circuit imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "If the ALJ does not satisfy his duty, his decision is not substantially justified." *Id.* In this case, the claimant is essentially alleging that the ALJ did not fully develop the facts, as is made clear

---

[6] This assertion is not meant to undermine or downplay the reality of, and difficulties often associated with, a learning disability. Rather, it is meant to suggest that, as a practical matter, Morales' condition seems to have little effect on his life outside school.

14

by his request that a remand occur and that a psychologist and a vocational expert be called to testify.

As alluded to earlier, there is some question regarding the ALJ's factual basis for relying solely on the grid at stage five of the five-step sequential analysis. Although the Court has already determined that there was substantial evidence in the record to support the ALJ's decision, we turn momentarily to consider the grounds for reversal in this case.

Reversal is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information. *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n. 22.

Morales has failed to make a sufficient showing that additional evidence could have been produced, if requested. Furthermore, there has been no showing that any additional evidence might have led to a different decision. As a result, remand for additional evidence, from a vocational expert, psychologist, or otherwise, is unnecessary. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

In cases such as this, our inquiry focuses on whether decision of the ALJ is supported by substantial evidence in the existing record. *Ripley*, 67 F.3d. at 557. The evidence available for review shows a learning disability, but otherwise suggests claimant lives a relatively normal life, a life that even includes plans to attend trade school. From this evidence the ALJ determined that Morales could perform heavy unskilled work. Based upon that finding, the ALJ applied the medical-vocational guidelines and concluded Morales was not disabled.

It is the ALJ's responsibility to determine an applicant's residual functional capacity. 20 C.F.R. § 404.1546. After considering the evidence, we conclude that the ALJ's determination that Morales was capable of performing heavy unskilled work was supported by substantial evidence.

## RECOMMENDATION

For the aforementioned reasons, this Court recommends that the Plaintiff's Motion for Summary Judgment (Docket No. 5) be DENIED and Defendant's Motion for Summary Judgment (Docket No. 7) be GRANTED. Accordingly, it is recommended that the decision of the Commissioner be AFFIRMED.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

DONE in Brownsville, Texas this 22nd day of January, 2004.

Felix Recio
United States Magistrate Judge