United States District Court
Southern District of Texas
FILED

JAN 2 8 2004

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| MICHAEL J. MORALES | § | |
| | § | Civil Action No. B-03-082 |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of the | § | |
| Social Security Administration | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S OBJECTIONS TO**
**MAGISTRATE JUDGE'S RECOMMENDATION**

**INTRODUCTION**

**A.      Request for Reconsideration**

The plaintiff asks the court to reconsider the magistrate judge's recommendation and files these objections pursuant to Rule 72(b) of the Federal Rules of Civil Procedure.

**B.      Case Background**

The plaintiff sought judicial review of an adverse administrative decision denying entitlement to social security disability benefits.  Judicial review is authorized under section 205(g) of the Social Security Act (42 U.S.C. 405(g)).

Cross-motions for summary judgment were filed, and Magistrate Judge Felix Recio ruled on the motion on January 22, 2004.  The Memorandum and Recommendation was entered on January 22, 2004,  and the parties were advised to file objection within ten (10) after receipt of the Memorandum and Recommendation.

The ruling recommends granting summary judgment in favor of the defendant on ground that (1) the plaintiff, even though he received childhood disability benefits based on a learning

disability, has no formal diagnosis of mental retardation [Magistrate's Recommendation, pages 7-9]; (2) the ALJ made no error in making as presumptive finding that the plaintiff can do unskilled work [Magistrate's Recommendation, pages 10-11]; and (3) the ALJ made no error in finding the plaintiff "not disabled" without vocational testimony because he believed (without explanation in the decision) that the medical-vocational guidelines were controlling, as the ALJ had analyzed the plaintiff's "domains of functioning" and had determined that he was not significantly limited. [Magistrate's Recommendation, pages 11-14]. Indeed, the Magistrate Judge offered his own expert opinion that the plaintiff's behavior "seems consistent with the behavior of most teenage boys." [Magistrate's Recommendation, page 14].

If a party timely objects to the magistrate judge's recommendation, the district court must make a *de novo* determination of the objectionable portions of the magistrate judge's recommendations or findings (Rule 72(b) F. R. Civ. P. and 28 U.S.C. 636(b)(1)).

## OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION

## I

The Magistrate Judge is wrong in ruling that Listing 12.05 is met only when a formal diagnosis of mental retardation has been made. [Magistrate's Recommendation, page 9]. All that is required is objective evidence of an abnormality which is demonstrated by accepted clinical or laboratory techniques (20 CFR 404.1508):

> " * * * Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. * * *" [emphasis added]

See: Sparks v. Bowen, 807 F.2d 616 (7th Cir. 1986); Cook v. Heckler, 739 F.2d 396 (8th Cir. 1986); Lynn v. Bowen, 702 F. Supp. 768, 772 (W.D. Mo. 1988).

Listing 12.05 requires (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (i.e. before age 22) and (2) a valid IQ score of 59 or less to meet subsection B or a valid IQ score of 60 to 70 plus another severe physical or mental impairment. There is no requirement of a formal diagnosis of mental retardation. The plaintiff's undersigned counsel takes particular exception to the Magistrate Judge's footnote which implies this appeal is foolish:

> "In fact, the Government seems to concede that Morales meets the IQ requirement of 112.05 and 12.05, while Morales himself seeks a remand to prove exactly that fact." [Magistrate's Recommendation, page 8, footnote 2]

The argument made to the Court is that the ALJ did not have sufficient evidence to determine whether the plaintiff's mental impairment meets the criteria under Listing 12.05. The operative facts which were seemingly overlooked in the rush to uphold the government's position are as follows:

1. The issue is whether the finding that, *upon attainment of age 18*, the plaintiff was able to engage in substantial gainful activity and was therefore not disabled under the adult standard for determining disability under the Social Security Act ("Act").

2. The lower levels of adjudication focused solely on the childhood standards for determining disability – whether the applicant engages in age-appropriate behavior. The form completed by State agency reviewers indicates that the plaintiff has a learning disorder; that he has a verbal IQ score of 58; that he has been in special education classes; but he is not disabled. [TR 297-300].

3. The record contains no psychometric testing other than a reference to the

WISC-R on which he achieved a verbal IQ score of 58 and a TONI-2 on which he achieved a score of 89. [TR 188, 194, 215, and 300]. The adult standards for determining disability focus on the applicant's ability to do physical and mental work-related activities. Under section 12.05B of the Listing of Impairments, an individual is deemed to be disabled if he or she has an IQ score of 59 or less.

4. The ALJ did not have a medical expert at the hearing to determine whether the IQ score of 58 measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults, or to determine the significance of the TONI-2 test. There is no psychological assessment in the record of the plaintiff's ability to perform various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting (20 CFR 416.921(b)).

**Here is the plaintiff's legal argument:**    Under section 12.05B of the Listing of Impairments, an individual is deemed to be disabled if he or she has an IQ score of 59 or less. The ALJ did not have a medical expert at the hearing to determine whether the IQ score of 58 measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults. The ALJ's findings with respect to the plaintiff's residual functional capacity rests on his independent medical assessment of the plaintiff's daily activities. The Court of Appeals for the Seventh Circuit has warned ALJs against "playing doctor" and making "common sense" medical conclusions:

"But judges, including administrative law judges of the Social Security

4

Administration, must be careful not to succumb to the temptation to play doctor....
The medical expertise of the Social Security Administration is reflected in
regulations; it is not the birthright of lawyers who apply them.  Common sense
can mislead; lay intuitions about medical phenomena are often wrong."

Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990), cited in Frank v. Barnhart, 326 F. 3d 618,

622 (5th Cir. 2003).

In Schmidt, the Court rejected the ALJ's "common sense" reasoning that an individual

who played handball for forty minutes a week despite a cardiac impairment could hold down a

job, holding that the ALJ could not substitute his medical judgment for that of a physician.  In the

case at bar, the ALJ discussed section 12.05 of the Listing of Impairments but failed to make

reference to the plaintiff's verbal IQ score of 58.  The ALJ did not have a medical expert at the

hearing to determine whether the IQ score measured on the Wechsler scale for children equates

to the same score on the Wechsler scale for adults, or to determine the significance of the TONI-

2 test.

## II

The Magistrate Judge's upholding of the ALJ's finding that the plaintiff can do unskilled

work is wrong because the analysis of the six domains of functioning is applicable only to a

determination of childhood disability (20 CFR 416.926a).   The sole issue presented to the Court,

which was seemingly overlooked in the rush to uphold the government's position, is whether the

finding that, *upon attainment of age 18*, the plaintiff was able to engage in substantial gainful

activity and was therefore not disabled under the adult standard for determining disability under

the Social Security Act ("Act").  Under the adult standard, the ALJ must analyze the plaintiff's

ability to perform work-related physical and mental activities (20 CFR 416.921) — not whether

the individual's behavior "seems consistent with the behavior of most teenage boys."

[Magistrate's Recommendation, page 14].

When a plaintiff has a severe mental impairment, the ALJ may not assume an ability to do the full range of unskilled work at any given exertional level and then use the medical-vocational guidelines to find the plaintiff not disabled. Agency policy recognizes that the skill level of a job is not necessarily related to the difficulty that an individual might have in performing the job, as an individual's mental impairment may make the performance of an unskilled job as difficult as an objectively more demanding one. Agency policy, therefore, requires a thorough evaluation of work-related mental limitations on an individualized basis (Social Security Ruling 85-15). There are *four* mental activities generally required by competitive, remunerative, unskilled work: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work — i.e. simple work-related decisions; (3) responding appropriately to supervision, coworkers and usual work situations; and (4) dealing with changes in a routine work setting (20 CFR 416.921(b)). A *substantial loss of ability* to meet any *one* of these basic work-related mental activities on a sustained basis (i.e. 8 hours a day, 5 days a week, or equivalent schedule) substantially erodes the occupational base for unskilled work and would justify a finding of disability. When an individual has a *limited ability* in *one or more* of these basic work activities, vocational testimony is required to determine the impact of the limitations on the individual's potential occupational base for unskilled work (Social Security Ruling 96-9p). See: Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) [noting that many unskilled jobs require more than the mental capacity to follow simple instructions]; Sanders v. Sullivan, 983 F. 2d 822, 823-824 (8th Cir. 1992) [ALJ erroneously assumed, without further psychological or vocational testing and

without expert vocational testimony, that work-related stress resulting from a mental disorder would be minimized in an unskilled job].

The ALJ's presumptive finding that the plaintiff can do unskilled work to is contrary to the above-cited regulations and administrative rulings and not supported by substantial evidence because he failed to assess specific mental limitations. There is no psychological assessment in the record of the plaintiff's ability to perform various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting. Therefore, this case should be remanded to the Commissioner for a supplemental hearing, an assessment of the plaintiff's specific work-related mental limitations, and a new decision.

III

The Magistrate Judge acknowledged that the ALJ "should have made findings regarding whether vocational evidence was warranted, and relatedly, whether any alleged non-exertional limitations significantly affected Morales' residual functional capacity to perform heavy work." [Magistrate's Recommendation, page 13]. But then the Magistrate Judge proceeds with a conclusion that the ALJ made no error in finding the plaintiff "not disabled" without vocational testimony because he believed (even without explanation in the decision) that the medical-vocational guidelines were controlling — after all, the ALJ had analyzed the plaintiff's "domains of functioning" (even though this criterium is applicable only to a determination of childhood disability) and had determined that the plaintiff was not significantly limited in his mental abilities  Indeed, the Magistrate Judge offered his own expert opinion that the plaintiff's

behavior "seems consistent with the behavior of most teenage boys." [Magistrate's Recommendation, page 14].

The issues of facts which were seemingly overlooked in the rush to uphold the government's position are as follows:

1. whether the plaintiff's IQ score of 58 is still valid and, if so, whether that IQ score measured on the Wechsler scale for children equates to the same score on the Wechsler scale for adults. The plaintiff contends that the ALJ should obtain a consultative psychological evaluation and, if necessary, the testimony of a medical expert to determine whether the plaintiff's mental retardation meets or equals the criteria under section 12.05B of the Listing of Impairments.

2. if the plaintiff cannot be found disabled on medical factors alone, whether he has functional limitations in terms of his ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting (20 CFR 416.920a, 416.921(b) and 416.945(c)). The plaintiff contends that the ALJ should obtain a consultative psychological evaluation and, if necessary, the testimony of a medical expert to determine those limitations.

3. whether the plaintiff's work-related mental limitations *as an adult* significantly impact on his potential occupational base. The plaintiff contends that the ALJ must obtain expert vocational testimony to determine what work, if any, the plaintiff can do. Whenever expert vocational testimony is obtained and the

decision is adverse to the plaintiff, the decision must include (1) citations of

examples of the jobs or occupations the plaintiff can do functionally and

vocationally, and (2) a statement of the incidence of such work in the region

where the plaintiff resides or in the several regions of the country (20 CFR

416.969a and Social Security Rulings 83-14 and 85-15).

This case should be remanded for further proceedings because fact issues must be

resolved by the Commissioner.  The Court may not re-weigh the evidence and substitute its

judgment for that of the Commissioner in determining issues of fact.   Conflicts in the evidence

must be resolved by the Commissioner, not the courts.  Newton v. Apfel, 209 F.3d 448, 452 (5th

Cir. 2000).

### CONCLUSION

Based on the foregoing arguments, the court should reject the magistrate judge's

recommendation; and upon review of the plaintiff's motion for summary judgment in its entirety

*de novo*, grant the motion and the relief requested therein.

Respectfully submitted,

INGRAM LAW FIRM, P.C.

By: _____
JOHN J. INGRAM II
State Bar No. 24025447
Southern District of Texas Bar No. 25468
3016-A N. McColl
McAllen, Texas 78501
(956) 661-0074 Telephone
(956) 661-0047 Facsimile

ATTORNEY FOR PLAINTIFF

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was mailed to the opposing counsel on _January 27th 2004_ by United States mail and by facsimile.

> Tasha Stevenson, Attorney-in-Charge
> Special Assistant U. S. Attorney
> Office of the General Counsel, SSA
> 1301 Young Street, Suite 430
> Dallas, Texas 75202
> Telephone: (214) 767-4536
> Facsimile: (214) 767-9189

10